UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CONTINENTAL WESTERN INSURANCE COMPANY, INC., Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:14-CV-14226 |
| PREFERRED MUTUAL INSURANCE COMPANY, Defendant. | ) ) ) ) ) | |

**AFFIDAVIT OF ANTHONY R. ZELLE IN SUPPORT OF
APPLICATION FOR ATTORNEYS' FEES AND COSTS**

1.     I am an attorney with the firm Zelle McDonough & Cohen LLP ("ZMC").  Along with others in my firm, I represent the Plaintiff, Continental Western Insurance Company in the above-captioned matter.

2.     I have represented insurance and business clients in litigation matters for more than 30 years. I have developed a national reputation representing insurance companies in coverage and bad faith claims.  My experience in Massachusetts includes three Supreme Judicial Court cases that provide a major part of the foundation of the law of c. 176D and c. 93A: *Rhodes v. AIG Domestic Claims, Inc.*, 461 Mass. 486 (2012), *Anderson v. National Union Fire Insurance Company of Pittsburgh PA*, 476 Mass. 377 (2017), and *R.W. Granger & Sons, Inc. v. J & S Insulation, Inc.*, 435 Mass. 66 (2001).  I have served as Chair of the Insurance Committee of the Defense Research Institute, the nation's largest association of defense lawyers. I have tried and handled the appeals of insurance bad faith cases in Massachusetts, Pennsylvania, New York and Rhode Island.  I am admitted to practice before the United States Supreme Court, the First, Second and Third Circuit Federal Circuit Courts of Appeal, the Federal District Courts of Massachusetts, Connecticut and California, and the State Bars of Massachusetts and Minnesota.

3.     Continental Western is a member of the W. R. Berkley Corporation, which I have represented in matters involving insurance coverage and extra-contractual claims since 2011.

4.     Acadia Insurance Company, another member of the W. R. Berkley Corporation, provides claims management services for Continental Western on matters involving claims in Massachusetts and other New England states.

5.     I was retained by Acadia in August 2013 to provide advice in connection with a lawsuit filed by Preferred Mutual Insurance Company against Leonard Lodigiani and Continental

Western's insured, C&K LLP II.  By this lawsuit (the "Rescission Case"), Preferred Mutual sought to avoid obligations it owed under a liability insurance policy issued to Lodigiani.

6.    Continental Western had a financial interest in the outcome of the Rescission Case because it had paid C&K LLP II more than $500,000 and sought to recover that sum through a subrogation claim against Lodigiani that was covered by the Preferred Mutual insurance policy.  The Preferred Mutual policy was the sole asset available to Continental Western to satisfy any liability that might be imposed on Lodigiani for the damage caused to C&K LLP II's property.

7.    Submitted as Exhibit 1 with this Affidavit are the billing invoices of ZMC which accurately reflect time spent by the ZMC attorneys and paralegal staff on the Rescission Case and the expenses incurred.  These invoices reflect attorney and paralegal time in the amount of $130,107.50 and litigation expenses in the amount of $4,594.06.

8.    As a result of Preferred Mutual's unfair and deceptive conduct in pursuing the rescission of Lodigiani's policy without conducting a reasonable investigation, Continental Western suffered actual damages of $134,701.56.

9.    Throughout the course of the litigation of the Rescission Case, I was responsible for the legal work performed on the matter and I diligently sought to ensure that all the legal fees and costs incurred were reasonably expended to achieve the objective of protecting Continental Western's interests in preventing Preferred Mutual from avoiding its obligations under the policy issued to Lodigiani.

10.   The ZMC attorneys who worked with me on the Rescission Case are Robert Maselek, Thomas Evans, Donna Hess, and Peter Barrett.  Colby Hetnar worked with me on the Rescission Case as a paralegal.  The attorneys and paralegal who worked with me on the Rescission Case had extensive training and experienced in insurance litigation.

11.   The hourly rates charged by ZMC for work on the Rescission Case were established through an agreement with the W. R. Berkley Corporation that designated ZMC as "Panel Counsel," and which provided ZMC with the opportunity to handle matters for the more than 30 individual insurance companies.  I agreed to the rates reflected on the invoices ($225/hour for my time, $195/hour for other attorneys' time, and $95 for paralegal time) because, although far less than the rates ZMC attorneys charged other clients, the relationship with W.R. Berkley Corporation ensured a substantial continuous flow of legal services work.

12.   As a matter of billing practice, invoices submitted for work on matters for W. R. Berkley Corporation member companies are reviewed by a third-party legal fee auditing firm. The auditing firm identified $18,810.25 in fees incurred in the Rescission Case that it determined were not in compliance with billing guidelines. ZMC routinely appeals amounts identified by the auditing firm and historically has recovered 95% of the amounts appealed.  In connection with the fees incurred in the Rescission Case that the

auditing firm determined were not in compliance with billing guidelines, ZMC reached an agreement with Acadia, on behalf of Continental Western, that these fees would be paid if Continental Western obtained an award of its actual damages in the chapter 93A case.

13. Preferred Mutual is obligated to pay the amounts identified by the auditing firm even though Continental Western's obligation to pay ZMC these fees was contingent on the outcome of the chapter 93A case. In *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324 (1993), the Supreme Judicial Court held that the lodestar method for determining reasonable attorneys' fees is generally applied even when there is a contingent fee agreement between plaintiffs and their counsel. Preferred Mutual cannot legitimately contend that the $18,810.25 in fees Continental Western conditionally agreed to pay ZMC for the work on the Rescission Case does not meet the lodestar standard.

14. The effort undertaken by ZMC to protect the interests of Continental Western in the Rescission Case included drafting a chapter 93A demand letter to Preferred Mutual which stated:

> I am writing on behalf of Continental Western Insurance Company, to explain the damage it has suffered as a result of the unfair and deceptive conduct of Preferred Mutual Insurance Company ("PMIC") in connection with its efforts to rescind the liability insurance policy issued to Leonard Lodigiani. Pursuant to Massachusetts Gen. Laws, Chapter 93A, demand is hereby made on PMIC to pay Continental Western $572,134.11 to resolve these matters [the Rescission Case and the subrogation claim against Mr. Lodigiani] and to absolve PMIC of liability under chapter 93A.

15. The primary objective of other work reflected on the invoices generated in the Rescission Case that refers to chapter 93A and Preferred Mutual's exposure to liability to Continental Western under chapter 93A was the resolution of the Rescission Case in a manner that would preclude the trial of that case.

16. Continental Western filed its chapter 93A case against Preferred Mutual on November 24, 2014. On January 21, 2015, Continental Western filed a motion to consolidate the Rescission Case and the chapter 93A case. [Document No. 111 in the Rescission Case, 3:13-cv-30138-MGM.] In its Memorandum in Support of the Motion to Consolidate, Document No. 112, Continental Western stated:

> No additional discovery need be taken to proceed to trial on the chapter 93A Claim . . . The evidence needed to demonstrate that PMIC's rescission was improper will permit the finder of fact to decide whether PMIC's conduct in rescinding the policy was unfair and deceptive. All this evidence, with the exception of Mr. Lodigiani's deposition, has already been obtained through discovery in the Rescission Action.

17. Preferred Mutual opposed the motion to consolidate by way of a motion to stay the chapter 93A case, Document No. 11, 3:14-cv-14226-MGM, and the Court did not consolidate the cases for trial. The ELECTRONIC Clerk's Notes for a Scheduling Conference held by Magistrate Judge Katherine A. Robertson on February 10, 2015 state:

> The Motion to Consolidate and Motion to Stay were taken under advisement. . . . The rescission case is ready for trial. The Clerk shall set a trial date based on the availability of the Court and the parties. A Procedural Order shall issue in the rescission case. In the 93A claim case a proposed joint schedule shall be filed by no later than 2/13/2015. The proposed schedule for discovery shall be for a short time frame and it should include expert designations and disclosures.

Document No. 17, 3:14-cv-14226-MGM.

18. Following the trial of the Rescission Case, Continental Western made a demand on Preferred Mutual to settle the chapter 93A case for the amount of the attorneys' fees and costs incurred in the Rescission Case.

19. After Preferred Mutual rejected that offer, I entered into a contingent fee agreement with Acadia, on behalf of Continental Western, for the chapter 93A case. The time spent and work performed by the attorneys and paralegal who worked on the chapter 93A case was contemporaneous recorded and is reflected on Exhibit 2 submitted with this Affidavit.

20. The attorneys who have worked with me on the chapter 93A case are Robert Maselek, Thomas Evans, Donna Hess, and Suzanne Whitehead (née Suzanne Young). Mr. Maselek is a partner with 24 years of legal experience concentrated on insurance coverage and bad faith matters. Mr. Evans is a civil litigation and trial lawyer with over 28 years of experience. Ms. Hess is a partner who has concentrated her legal practice on insurance coverage and bad faith issues since 2001. Ms. Young has been handling insurance coverage and bad faith matters since joining ZMC in 2009 when she was graduated from Boston University Law School. Colby Hetnar has been working with me as a paralegal since 2011 and is an indispensable asset to clients I am representing at trial.

21. The skill of the attorneys representing Continental Western is reflected in the persistence demonstrated and the success achieved in the Rescission Case and the chapter 93A case.

22. The hourly rates reflected on the ZMC's billing records are consistent with rates prevailing in the Massachusetts legal community for similar services by lawyers of comparable skill, experience and reputation.

23. The fees and costs generated in the representation of Continental Western on the chapter 93A case through November 15, 2017 total $489,706.09. They consist of attorneys' and paralegal fees in the amount of $438,347.50, expert witness fees in the amount of $45,485.69, and other litigation expenses total $5,872.90. The invoices of the expert witness for Continental Western, Bernd Heinze, are submitted with this Affidavit as Exhibit 3.

24.     Suzanne Whitehead (nee Young) $275 has worked at Zelle McDonough & Cohen since she was graduated from Boston University School of Law in May 2009. She litigates matters involving complex insurance disputes, civil disputes, unfair business conduct, employment practices, contractual disputes, investment fraud, construction disputes, and Americans with Disabilities Act claims. Additionally, her practice involves advising and representing insurers in insurance coverage disputes relating to general liability and professional liability policies.  Ms. Young also serves as an Editor for the Defense Research Institute (DRI) Covered Events publication.

Signed under the pains and penalties of perjury.


Dated:  November 17, 2017                              /s/ Anthony R. Zelle
                                                    Anthony R. Zelle, BBO #548141

5